## Clark, et al. v. Bourbon County Cooperative Live Stock Association, et al.

(Decided November 24, 1925.)

### Appeal from Bourbon Circuit Court.

1. Nuisance—Instruction Railroad was Not Liable for Conducting Stock Sales Held Proper, in View of Evidence.—In actions against railroad and live stock association, where complaints alleged maintenance of pens and yards, and conduct of stock sales constituted a nuisance, held court's instruction to jury to find for defendant railroad company as to damages arising out of operation and conduct of stock sales was proper, in view of evidence showing railroad had nothing to do with such sales, and had not rented its pens or yards to live stock association, except for purpose of loading stock into cars.

2. Appeal and Error—Party Not Objecting to Instruction when Given or Offering Instruction on Subject Cannot Complain of its Incompleteness.—In actions against live stock association and railroad company for maintenance of nuisance, where plaintiffs did not object to instruction for defendant railroad company when it was given, or offer instruction on the subject, they could not complain that court did not give whole law of the case or other instructions on the subject or on any other phase of the case.

3. Nuisance—Evidence of Offensive Odors Held Inadmissible Under Pleadings.—In actions for damages for nuisance in maintaining live stock pens and yards conducting stock sales, where there were no averments that trucks, used in hauling live stock into yards, were filthy or gave off offensive odors, it was not competent to introduce evidence on such subject.

4. Appeal and Error—Refusing Interrogation of Witness as to Condition of Trucks Hauling Cattle Not Prejudicial, if Error, where Witness had Said he Did Not Know their Condition.—In actions for damages for maintenance of nuisance, where witness had testi-

fied he had no knowledge as to condition of trucks which hauled cattle and stock, held court's ruling prohibiting their interrogation along that line, if error, was not prejudicial, inasmuch as witness had testified he did not know of trucks' condition.

5. Evidence—Where Plaintiffs Introduced Evidence of General Nature of Defendant's Business, Proper to Admit Defendants to Show Purposes of Organization.—In actions against live stock association and railroad for maintenance of nuisance, where plaintiffs had introduced evidence of the general nature of defendant live stock association's business, it was not error to permit defendants to ask witness what the purpose of organization of live stock association was.

6. Nuisance—Verdict Warranted by Evidence.—In actions against live stock association and railroad for maintenance of nuisance, where evidence was conflicting, and verdict of jury might have been either way, the jury was in its province when it accepted evidence of defendants and found facts accordingly.

7. Trial—After Verdict Rendered for Defendant, and Judgment Entered Accordingly, Plaintiffs' Motion to Transfer Case to Equity Docket and for an Injunction Properly Refused.—In actions against railroad company and live stock association for damages arising from maintenance of nuisance, where verdict was found for defendants, and judgment entered thereon accordingly, held court properly overruled motion to transfer cases to equity docket and for an injunction restraining continuance of the nuisance, in view of entry of judgment and evidence that there was no nuisance maintained by defendants.

MARCUS C. REDWINE and C. F. SPENCER for appellants.

DENIS DUNDON and EMMETT DICKSON for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

Alleging that the yards and pens maintained and operated by the appellees, Bourbon Cooperative Live Stock Association and the Louisville & Nashville Railroad Company, on South Main street in the city of Paris, near their residence, were filthy and gave off offensive stenches constituting a nuisance, materially impairing the value of their residence properties, appellees, Hattie Clark, and her two sisters instituted an action in the Bourbon circuit court against the live stock association and the railroad company to recover damages and to abate the nuisance. About the same time appellant, Slicer, instituted a similar action against the same defendants, seeking the same relief, he being a property owner residing upon South Main street in Paris. After

the issues were made up the two actions were heard and tried together before the same jury, and these two appeals are now prosecuted upon the same record. The verdict of the jury which the judgment followed was in favor of the stock association and the railroad company, and the Misses Clark and Mr. Slicer appeal, asking a reversal of the judgment upon several alleged grounds, viz.: (1) the court rejected competent evidence offered by the plaintiffs and admitted incompetent evidence offered by defendants; (2) the court erred in its instructions to the jury; (3) motion of plaintiffs for injunction abating the nuisance should have been sustained.

The record is a large one. The bill of evidence contains more than 450 pages of typewritten matter. The plaintiff introduced about seventeen witnesses while the defendants introduced more than thirty witnesses. We can do no more than recite the substance of the testimony presented by each side.

For the plaintiffs it was testified that they each owned residential property on South Main street in Paris, and resided there; that the street is about 38 feet or 40 feet wide, and that the stock yards and pens of appellees were on the opposite side of the street only a short distance from appellants' residences; that in June, 1923, the live stock association began to have auction sales of live stock on their property adjacent to Main street, and that at such sales large crowds of persons gathered who bid for the live stock; that the association employed an auctioneer who talked loud and that there was much noise and confusion in and around the stock yards on sale days; that these sales were conducted regularly on Friday of each week; that the live stock, which were carried in chiefly by trucks, began to arrive on Thursday and were placed in the yards and pens of the appellees, remaining there overnight, bawling, bleating, squealing and making other loud and disagreeable noises, so much so that appellants could not sleep; that on one occasion four or five dead sheep were laid out on appellees' premises for a short time and that they were later buried on a vacant lot belonging to appellees' and located just across the street from appellants' homes; that before they were buried they gave off offensive odors and that the sheep were buried so near the surface of the earth that they continued to give off bad odors which permeated the air in and about the home of appellants

and rendered them almost uninhabitable; that dogs clawed out the dead carcasses and carried the bones upon the streets and near the premises of appellants and thus increased the offensive odors caused by the carcasses; that on one occasion a hog was castrated in front and very near the residence of the Misses Clark, to their great annoyance; that before the live stock sales were inaugurated by appellee association there were no offensive odors in or about the homes of appellants, nor were these noises sufficient to disturb them, but that after the establishment of the sales appellants were unable to enjoy their homes or to live in peace on account of the loud noises and offensive odors emanating from the stock yards and pens, and that the value of their property was greatly depreciated thereby; that the street was thickly built up with residences along on the side opposite the yards and pens; that the railroad company had let to the live stock association its pens used by it for loading and unloading stock and had allowed it to use its property in the operation and maintenance of the nuisance. There was also evidence to show that the trucks which carried the live stock to the yards and pens were filled with offal, which gave off offensive odors, and that these trucks were parked on the street in front of and very near the residences of appellants. There was no averment, however, by appellants in their petitions as amended concerning the offensive odors arising from the filthy trucks or concerning the castration of the hog about which appellants were permitted to testify.

For appellees, live stock association and the railroad company, it was shown that the sales were conducted only on Fridays; that the stock did not arrive until Friday morning and was shipped out by 8 o'clock Friday night in almost every instance; that there was no unusual bleating, bawling or squealing of the animals while in the pens and in the yards, nor were there any offensive odors emanating from the yards and pens, but that, on the contrary, appellee, live stock association, caused the yards and pens to be swept and cleaned immediately after each sale and to be thoroughly fumigated and cleansed, and germicides were generally employed; that there was a high board fence along South Main street in front of the yards so that people on the street could not see into the yards except at the gate. Appellees proved that the dead sheep buried on a vacant lot on their premises did not belong to either of them but were taken from a carload

shipment on the railroad and were buried deep under much earth and that they were not dug up by dogs, as claimed by appellants; that the sheep were buried immediately upon being unloaded from the train and did not give off but little if any offensive odors. They further proved that they had nothing to do with the trucks about which appellant complained, did not own or control them, but that the trucks belonged to persons who brought live stock to the yards for sale. In proving these facts they called officials of the city of Paris, especially the health officers, police judge and police officials. They also proved that when appellants complained to the State Board of Health that body sent a representative to examine the yards and pens and found the same in good condition, and so reported.

With the evidence thus conflicting the court, upon its own motion, instructed the jury that if it believed from the evidence that between June 25, 1923, and June 25, 1924, time of which the plaintiffs complain, the defendant, stock yards association, operated a stock sales business on the east side of South Main street, and that in the operation of that business, as it was operated, the stock therein was bleating, bawling, lowing or making disagreeable noises to the extent that it interfered with the reasonable or peaceable enjoyment by the plaintiffs of the comfort of their homes; or, if the jury believe from the evidence that during the time mentioned the live stock at said sales, or the deposit from them, created obnoxious, unhealthful or nauseous stenches, which filled or permeated the air in and around plaintiffs' dwelling houses, to their discomfort, annoyance or injury, or making them or any of them sick, or injuring their health, then the jury should find for plaintiffs and fix their damages at such sum as will fairly and reasonably compensate them for the impairment, if any, of the comfort or peaceable enjoyment of their homes or injury to their health, if any, or to the health of any of them; and the court also gave the jury a measure of damages to be used in case it found for the plaintiffs. This instruction properly submitted the whole case of the plaintiffs, now appellants, to the jury. There is no complaint of this instruction. Appellants, however, complained of instruction number three, reading:

"3rd. The court instructs the jury that they will find for the defendant, Louisville & Nashville

Railroad Company, as to any liability for or upon any claim for damage made by plaintiffs against said company, on account of anything done by or any damage, if any, arising out of the operation and conduct by their co-defendants of the stock sales, as complained of in plaintiffs' petition.''

When this instruction was given by the court to the jury there was no specific objection to it, but the plaintiffs objected to the instructions given by the court to the jury because they did not contain the whole law of the case, thus indicating the instructions given by the court to the jury were satisfactory so far as they went, complaining only that the court had not given the whole law of the case. As there was no evidence tending to show that the railroad company had anything whatever to do with the live stock sales carried on by the live stock association, and further, that the railroad company had not rented or let its loading pens to the live stock association except for the purpose of loading live stock into railroad cars in conjunction with the association's business, we are inclined to the view that instruction number three was proper and the court did not err in giving it to the jury. If, however, it was erroneous, appellants are in no position to complain because they did not object to it at the time it was given and did not offer an instruction upon the subject, and are now, therefore, estopped to complain that the court did not give an offered instruction upon the subject or upon any other phase of the case, and they are in no position to complain that the court did not give the whole law of the case, if the court did not give the whole law of the case, or that the court did not give other instructions inasmuch as none were offered by appellants. Downs & Bros. v. Fireman's Insurance Company, 206 Ky. 318.

With respect to the admission of incompetent evidence offered by the appellees and the rejection of competent evidence offered by appellants, the latter say in their brief that the court invariably sustained the defendants' objection to any and all testimony offered by plaintiffs showing the conditions that had existed at the stock yards on the day of sale, for the evidence so offered did not conduce to prove one of the *specific causes complained of in the petition.* We think appellants must concede that no evidence was competent which did not go to prove the averments of their pleadings. This objection

of appellants, however, goes chiefly to the refusal of the trial court to allow them to introduce evidence concerning the filthiness of the trucks used in hauling live stock to the yards.   There was no averment in the petition that the trucks were filthy or gave off offensive odors.   It was not, therefore, competent to introduce evidence upon this subject although the court allowed appellants to do so by some of their witnesses and rejected it in other instances.   Appellants also complain that they were not allowed to prove by one of the defendants the condition of the trucks, and they cite the evidence in their brief as an example of the ruling of the court, the questions and answers copied being:

"Q.   In what condition were the trucks, the cattle and stock were hauled in?   A.   I did not pay any attention to that.

"Q.   You did not notice that?   (To which question the defendant objected; the objection was sustained and the plaintiffs excepted)."

Inasmuch as the witness had already stated, in substance, he had no knowledge of the condition of the trucks, we cannot understand how appellants could have been prejudiced by the court's ruling which did not allow them to further pursue that line of interrogation.

They also complain that the court allowed the defendants to ask the following questions:

"Q.   What was the purpose of the organization of the Cooperative Live Stock Association?   (Objection by counsel for plaintiffs.)

"By the court: What is your idea about it?

"By counsel for defendant: To show the purpose of the organization and that it was not for the purpose of annoying these people but to do business.

"By the court: Go ahead.   (To the ruling of the court plaintiff excepts.)

"By defendant: Why did we organize it?

"By attorney: Yes?   A.   Primarily to make money and to furnish the farmers of Bourbon county and other counties an outlet for their stock."

Inasmuch as appellants had introduced evidence showing the general nature of the business of appellees, the conduct of the sales of live stock and the carrying of live stock to the yards by producers, we fail to see any

great disadvantage or prejudice to their rights arising out of the line of interrogation just cited. In fact, the rulings of the trial court upon the evidence seem to have been fair to both sides, and the record, a big one, is unusually free from erroneous rulings upon the admission of the evidence.

The verdict of the jury might have been either way, accordingly as that body may have appraised the credibility of the witnesses and the surroundings of the case, it having been allowed to view the stock yards and pens. There is strong evidence to support the contention of appellants and there is equally as strong evidence in support of the claim of the appellees. The jury was therefore in its well recognized province when it accepted the evidence of appellees and found the facts accordingly.

After the verdict of the jury had been returned and the court had entered judgment in conformity thereto, the plaintiffs entered motion to transfer the cases to the equity docket and for an injunction restraining the continuance of the nuisance. This motion the court overruled, and we think properly (1) because there had been a judgment entered upon the verdict dismissing the two petitions; and (2) because the jury had found the facts against appellants, which finding evidences, if it did not finally determine, that there was no nuisance maintained by appellees upon their premises.

After a careful review of the whole record we find no error to the prejudice of the substantial rights of the appellants, or either of them.

Judgment affirmed.